IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PATRICIA ANN MAYNOR,
    Plaintiff,

vs.                                  Case No. 3:11cv109/WS/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.      PROCEDURAL HISTORY

        On October 26, 2006, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning October 1, 2005 (Tr. 10).[1] Her applications were denied initially

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on May 31, 2011 (Doc. 14). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing was held on May 16, 2009, and on April 14, 2010, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (Tr. 11–16). On December 29, 2010, the Appeals Council denied Plaintiff's request for review (Tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.     FINDINGS OF THE ALJ

On April 14, 2009, the ALJ made several findings relative to the issues raised in this appeal (Tr. 10–16):

1) Plaintiff meets the insured status requirements of the Act, for DIB purposes, through December 31, 2011.

2) Plaintiff has not engaged in substantial gainful activity since October 1, 2005, the date she alleges she became disabled.

3) Plaintiff's severe impairments include back pain, ankle pain, and arthritis, but no impairment—alone or in combination—meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as follows: during an eight-hour workday she can sit six hours and stand/walk four to six hours, but she must be able to alternate between sitting and standing; she can lift or carry ten pounds frequently; she has no manipulative, environmental or visual limitations; and, even considering her marginal education, she is able to read and write to the extent she can understand, remember and carry out very short, simple instructions (i.e., perform unskilled work).

5) Although Plaintiff cannot perform her past relevant work as a restaurant cashier or stocker, since that work requires the performance of work-related activities that are precluded by her RFC, she is able to perform a wide range of sedentary work which exists in significant numbers in the national economy; Plaintiff, therefore, is "not disabled," as defined under the Act, from October 1, 2005, through April 14, 2009, the date of the ALJ's decision.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper

legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A. Personal History

Plaintiff was born on September 18, 1968, and thus was thirty-eight years of age on the date she alleges she became disabled (Tr. 27). She testified that she completed the sixth grade, but she could not remember if she was in special education classes (Tr. 28). She also stated she can read and write "some," but she has never had a driver's license and has never learned to drive (Tr. 14). She noted she was able to read the letter advising of her hearing before the ALJ, and she can "sometimes" read the newspaper (Tr. 14). She has previous work experience in a restaurant as a cashier, cleaner, and stocker, and she last worked on November 1, 2006 (Tr. 12).

B.  Relevant Medical History[2]

On May 19, 2005, Plaintiff presented to Ida Trasmonte, M.D., with complaints of daily back pain resulting from a motor vehicle accident in October 2004. A lumbar magnetic resonance imaging scan ("MRI") showed minimal desiccation at L4-L5 with small bulging but no evidence of disc herniation. The physician referred to thoracic and lumbar spine x-rays taken in October 2004 and noted they were normal except for minimal scoliosis and small osteophytes. On July 10, 2006, Plaintiff was seen at Baptist Hospital for back pain, at which time it was noted that she was working full time at a fast food restaurant. Plaintiff was treated conservatively and discharged with prescriptions for Lortab and Flexeril. On March 28, 2006, Plaintiff was evaluated at Baptist Hospital for ankle pain. X-rays showed no evidence of fracture or dislocation, although advanced degenerative joint disease ("DJD") was noted. On July 9, 2007, Plaintiff presented to Earl Crosswright, M.D., a family practitioner, with complaints of low back pain and left ankle pain (*see* Tr. 353–54). Dr. Crosswright noted that Plaintiff had problems with her back and ankle for "many years," but she had never received regular medical care for her symptoms (Tr. 353). He also noted that Plaintiff reported taking over-the-counter medications for pain, such as Advil, Tylenol, and Motrin (Tr. 353). Dr. Crosswright assessed chronic low back pain, left ankle DJD, hypertension, and obesity (Tr. 354). He prescribed Naprosyn and Darvocet and referred Plaintiff to physical therapy for her back and/or ankle pain, and he recommended weight loss, dietary changes, and exercises such as water aerobics for her obesity (*id.*). Finally, Dr. Crosswright advised Plaintiff to return in four weeks for follow-up (*id.*).

V.  DISCUSSION

Plaintiff raises two issues in this appeal. First, Plaintiff contends the ALJ erred at step five of the sequential evaluation in finding that sedentary work exists in significant numbers in the national economy that she can perform (Doc. 16 at 6). Second, Plaintiff asserts the "ALJ committed reversible error by ignoring [her] obesity" (*id.*).

A.  ALJ's Findings at Step Five

---

[2] Unless otherwise indicated, the information in this section is derived from the opinion of the ALJ (*see* Tr. 13).

At step four of the sequential evaluation, the ALJ determined that Plaintiff could not return to her past relevant work. The ALJ thus proceeded to step five, where he found Plaintiff "not disabled" because she can perform "at least sedentary work found to exist in significant numbers in the national economy and in the regional economy" (Tr. 16). Plaintiff contends the ALJ erred at step five because he failed to articulate the specific jobs she can perform (Doc. 16 at 7). Plaintiff also contends the ALJ erred in failing to solicit testimony from a vocational expert ("VE") regarding available jobs. More specifically, Plaintiff asserts that because she has pain, a non-exertional impairment, and because she is limited to unskilled work, she cannot perform a full range of sedentary work, and the ALJ was required to obtain testimony from a VE (*id.* at 7–10). In response to Plaintiff's contentions, the Commissioner first notes, "While the ALJ did not specifically cite the applicable medical-vocational rule(s), he presumably utilized the medical-vocational guidelines ["the grids"] to meet the Commissioner's burden in this case." (Doc. 17 at 8) (emphasis added). The Commissioner then asserts that based on Plaintiff's age, past work experience, and education, the grids (or more specifically, grid rules "201.18 through 201.20") direct a finding of not disabled (*id.*).

Once a claimant proves she can no longer perform her past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). One way for the Commissioner to carry this burden is through an application of the grids. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

> The grids are a series of matrices which correlate a set of variables—the claimant's residual functional capacity (i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience [including whether the previous work was skilled or unskilled]. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

Gibson v. Heckler, 762 F.2d 1516, 1520 (11th Cir. 1985).

In determining whether exclusive reliance on the grids is appropriate, the ALJ must first categorize the claimant's impairments as either exertional or nonexertional. *See, e.g.*, Phillips v. Barnhart, 357 F.3d 1232, 1241–43 (11th Cir. 2004). Exertional impairments affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at 1241 n.11. Nonexertional impairments affect an individual's ability to

meet other work-related demands and include limitations such as pain, medication side effects, and depression. *Id.*; MacGregor, 786 F.2d at 1054. An ALJ may rely exclusively on the grids when each factor used in the determination describes the claimant's situation, and when the case involves only exertional impairments. Foote, 67 F.3d at 1559. In contrast, if the claimant has a nonexertional impairment that limits a wide range of work at a given level, an ALJ is required to consult a VE. *Id.*

Here, the ALJ did not state he was applying the grids or indicate which rule or rules within the grids he relied upon in finding Plaintiff "not disabled." Thus, in order to uphold the Commissioner's final decision, this court would first have to "presume" that the ALJ applied the grids in this case, as the Commissioner urges. The court would then have to presume that the ALJ applied the correct rule or rules within the grids. And finally, the court would have to presume that application of the correct rule or rules indeed compels a finding that Plaintiff is not disabled.[3] This court cannot rely on such presumptions to affirm the decision of the ALJ.

It matters not whether evidence exists in the record to support the ALJ's ultimate findings, as the Commissioner's suggests; the question is whether the ALJ's decision reflects an accurate and logical bridge between the evidence and the result. It does not in this case. *See* Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995) (to permit an informed review, ALJ must articulate his analysis of the evidence); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) (same); Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir. 1984) ("While there may be strong grounds upon which the ALJ rejected claimant's evidence in this case, as the district judge presumed, we cannot say on the basis of the record that such a conclusion is self-evident.") (emphasis added); Social Security Ruling ("SSR") 82-62 (eff. Aug. 20, 1980) ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.").

---

[3] The Commissioner posits that "Rules 201.18 through 201.20," found within 20 C.F.R. Part 404, Subpart P, Appendix 2, direct a finding of not disabled, and therefore the ALJ's decision should be affirmed (*see* Doc. 17 at 8). The Commissioner's position, however, is unavailing. As previously noted, the ALJ not only failed to indicate that he applied the grids, he also failed to indicate the specific rule or rules within the grids that he relied upon in finding Plaintiff not disabled. Thus, this court cannot determine whether the ALJ considered the appropriate variables or factors (i.e., those that accurately describe Plaintiff).

Case No. 3:11cv109/WS/EMT

Compounding the error at step five is the ALJ's finding at step two that Plaintiff suffers from severe back pain and severe ankle pain, as those conditions may preclude exclusive reliance on the grids. As previously noted, an ALJ may not rely exclusively on the grids when a case involves nonexertional impairments, such as pain. Foote, 67 F.3d at 1559. Moreover, it is unclear in this case whether the grids adequately account for the limitation in Plaintiff's RFC to "unskilled work" (and/or, as the ALJ stated, work in which Plaintiff must "understand, remember, and carry out very short, simple instructions" (*see* Tr. 13)), due to her limited education and poor literacy skills. Thus, the undersigned cannot confidently conclude that use of the grids is (or was) proper in the instant case. *See* Walker v. Bowen, 826 F.2d 996, 1002–03 (11th Cir. 1987) (exclusive reliance on the grids is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills").

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Foote, 67 F.3d at 1562 (stating that an insufficient credibility finding is "a ground for remand when credibility is critical to the outcome of the case"); Salter v. Astrue, Case No. 3:08cv189/RV/EMT (N.D. Fla. May 22, 2009 (Doc. 15)) (same). A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d at1219 ("The record . . . is fully developed and there is no need to remand for additional evidence.").

Here, the evidence does not establish disability without a doubt; thus, a remand for further administrative proceedings is the appropriate remedy for the ALJ's error at step five. Upon remand, the ALJ should determine whether exclusive reliance on the grids is appropriate in light of the

severity of Plaintiff's back and ankle pain, as well as her limited education and literacy skills. If so, the ALJ should clearly explain the determination; if not, the ALJ should solicit testimony from a VE.

      B.      Plaintiff's Obesity

Plaintiff contends the record documents her obesity, and the ALJ erred by "ignoring" it and by failing to comply with SSR 02-1p (*see* Doc. 16 at 11–13). She also contends her obesity should have been deemed a severe impairment at step two and, apparently, that it should have factored into the RFC determination and/or precluded exclusive reliance on the grids (*id.*). In support, Plaintiff points to Dr. Crosswright's one-time assessment/diagnosis of obesity, as well as testimony and other evidence in the record that documents her height and weight (e.g., in December 2006 and July 2007, a consultative examiner recorded her height at five feet, two inches, and her weight at 206 pounds and 215 pounds, respectively; in March 2009 she testified she weighed 220 pounds) (*id.* at 11). Moreover, Plaintiff contends, the evidence as to her height and weight corresponds to a body mass index ("BMI") that evidences obesity (*id.*). Plaintiff's contentions, however, are unpersuasive.

Initially, the ALJ did not ignore Plaintiff's weight, as she contends (*see* Tr. 15). The ALJ noted that Plaintiff testified she weighed 220 pounds, was only five feet and two inches tall, and was unaware of the reasons for her weight gain (Tr. 15, 30–31). The ALJ also stated that after considering Plaintiff's weight, he concluded "that the impairment is not severe in that no treating or examining physician has assigned any limitations based upon the claimant's obesity" (Tr. 15). Plaintiff has pointed to no evidence that contradicts the ALJ's finding.[4] Although Dr. Crosswright diagnosed obesity on one occasion, he did not impose any resulting functional limitations; to the contrary, he suggested that Plaintiff participate in physical therapy and exercises such as water aerobics. Moreover, his diagnosis of obesity is alone insufficient to establish severity at step two. *See, e.g.*, Salles v. Comm'r. of Social Security, 229 Fed. Appx. 140, 145 (3d Cir. 2007). Likewise, Plaintiff's height and weight, as documented in the record, fail to establish a severe impairment. SSR 02-1p (eff. Sept. 12, 2002) specifically states that there is "no specific level of weight or BMI that equates with a 'severe or a 'not severe' impairment." As with any other impairment, the Commissioner "will find that obesity is a 'severe' impairment when, alone or in combination with

---

[4] In this court's scheduling order, issued June 6, 2011, Plaintiff was specifically warned that, "Failure by either party to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (Doc. 15 at 2) (emphasis in original).

another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* Plaintiff has pointed to no evidence of obesity-related limitations in the file, and the court is aware of none. Plaintiff merely recites general information regarding limitations that obesity may cause in some individuals, but she has not shown that she personally suffers the same limitations or that her weight significantly limits her ability to perform basic work activities (*see* Doc. 16 at 13 (citing SSR 02-1p, which notes potential limitations that may result from obesity)). Thus, Plaintiff is not entitled to relief on this claim.

VI. CONCLUSION

For the reasons discussed in Section V.A. of this Report, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed. *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at 1556 (remanding for additional administrative proceedings).

Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this Report and Recommendation, and that the Clerk be directed to close the file.

At Pensacola, Florida this 14th day of February 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**